AO 243 (Rev. 5/85)

## MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

# United States District Court

| District | GUAM | CV-02-00012 |
|---|---|---|

| Name of Movant | MARCELO PENAS | Prisoner No. 01790-093 | Case No. 98-00305 |
|---|---|---|---|

**Place of Confinement** F.C.C. BEAUMONT, TEXAS LOW

UNITED STATES OF AMERICA    V.    MARCELO PENAS
(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack   U.S. DISTRICT COURT DISTRICT OF GUAM

**FILED**
DISTRICT COURT OF GUAM

2. Date of judgment of conviction   10/25/99

APR 17 2002

3. Length of sentence   120 months

MARY L.M. MORAN
CLERK OF COURT

4. Nature of offense involved (all counts)   CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE, 21 USC, Sections 841 & 846.

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   N/A

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐   N/A
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☐   N/A

8. Did you appeal from the judgment of conviction?
   Yes ☐ No ☒

9. If you did appeal, answer the following:    N/A

   (a) Name of court _____

   (b) Result _____

   (c) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No☒☒☒☒

11. If your answer to 10 was "yes," give the following information:    N/A

   (a)(1) Name of court    N/A _____

     (2) Nature of proceeding _____
      N/A _____

     (3) Grounds raised _____

      N/A _____

      _____

      _____

      _____

     (4) Did you receive an evidentiary hearing on your petition, application or motion?
      Yes ☐ No ☐    N/A

     (5) Result _____
          N/A
     (6) Date of result _____

   (b) As to any second petition, application or motion give the same information:
          N/A
     (1) Name of court _____
          N/A
     (2) Nature of proceeding _____

          N/A
     (3) Grounds raised _____

      _____

      _____

      _____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐ N/A

(5) Result_____ N/A

(6) Date of result _____ N/A

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.    Yes ☐ No ☐    N/A
(2) Second petition, etc.    Yes ☐ No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

N/A

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: UNCONSTITUTIONAL SEARCH AND SEIZURE

Supporting FACTS (state *briefly* without citing cases or law)

SEE MEMORANDUM BRIEF ATTACHED

B. Ground two: INEFFECTIVE ASSISTANCE OF COUNSEL

Supporting FACTS (state *briefly* without citing cases or law):

SEE MEMORANDUM BRIEF ATTACHED

C. Ground three: N/A

Supporting FACTS (state *briefly* without citing cases or law):

N/A

(5)

D. Ground four: _____ N/A _____

Supporting FACTS (state *briefly* without citing cases or law): _____

N/A

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

PENAS DID NOT FILE APPEAL BECAUSE COUNSEL TOLD HIM HE DID NOT

HAVE ANY APPEALABLE ISSUES, DESPITE THE FACTS THAT PENAS INFORMED

HIM OF WARRANTLESS FORCED ENTRY.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☒~~xxxx~~

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing _____ N/A _____

(b) At arraignment and plea RICHARD P. ARENS, 210 ARCHBISHOP FLORES STREET,

HAGATNA, GUAM, 96910

(c) At trial _____ N/A _____

(d) At sentencing _____ SAME AS ABOVE _____

(e) On appeal _____ N/A _____

_____

_____

(f) In any post-conviction proceeding _____ N/A _____

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

_____ N/A _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No☒XXX

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No☒XXX

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____ N/A _____

_____

(b) Give date and length of the above sentence: _____

_____ N/A _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

_____ N/A _____

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

✓ _____ 02/27/02 _____
(date)

✓            _____
Signature of Movant

UNITED STATES DISTRICT COURT
DISTRICT OF GUAM


UNITED STATES OF AMERICA,          *

                                   *

v.                                 *          Case No. CR-98-00305-001

                                   *

MARCELO PENAS

                                   *
_____

MEMORANDUM BRIEF IN SUPPORT OF UNTIMELY PETITION
FOR HABEAS RELIEF, PURSUANT TO 28 U.S.C., SECTION
2255.
_____


**Marcelo Penas,** (Petitioner/Penas), appearing through pro se representation, moves this Honorable Court for habeas relief pursuant to 28 USC, Section 2255, and Rule 9(a) of the Rules governing Section 2255 Motions. Penas raises claims of a constitutional magnitude in violation of his Fifth and Sixth Amendment rights to due process of law, and effective assistance of counsel. Pena is not an attorney and cannot afford to retain a professional attorney, therefore, he request that the Court liberally construe his pleadings, citing the principles of **Haines v. Kerner,** 404 U.S. 519 (1972). In support of his motion, Penas shows the following:

# JURISDICTION

This Court invokes jurisdiction under 28 U.S.C., Section 2255. Subject matter jurisdiction is ensued pursuant to 21 U.S.C., Section 841(a)(1) and 846.

## PRELIMINARY STATEMENT

Marcelo Penas is 53 years old, and of Asian descent. Penas completed college in 1972 with a degree in Industrial Engineering. Mr, Penas remains married to his wife of 30 years, and has three children in ages ranging from ages of 12 - 24. In 1992, Penas and his family were permitted into the United States as permanent residents. The family settled in Torrance, California. Prior to this case, Penas has never been introuble with the law. His family describes him as always being a law abiding individual.

Mr. Penas is not an attorney, and does not have the financial resources to obtain a professional attorney. He is having to rely on inmate legal assistance. Penas requests that this Court liberally construe his pleadings , as he is not an attorney, citing the principles of Haines v. Kerner, 404 U.S. 519 (1972).

Case 1:02-cv-00012    Document 1    Filed 04/17/2002    Page 8 of 55

## PROCEDURAL HISTORY

On December 14, 1998, a single count Information was filed, charging Penas with Conspiracy to Distribute Meth-amohetamine Hydrochloride, (Ice), in violation of 21 USC, Section 841(a)(1) and 846. Penas entered a guilty plea to the Information, pursuant to a Plea Agreement. On October 25, 1999, Penas was sentenced to 120 months impri-sonment. No appeal was taken in this case. **Exhibits A.**

## STATEMENT OF THE CASE

The following statement of the facts are based on the probation officers conclusions in Penas PSR. On November 10, 1998, Alwin Samala Cayas arrived at the GUam Internatio-nal Airport on a flight from Los Angeles, California. According to the PSR, during Customs inspection, it was discovered that the bottom portion of two aluminum scuba diving tanks had been cut off and reconnected. Also accor-ding to the PSR, it was discovered that the tanks contained 1,801.5 grams of methamphetamine.

Immediately, Cayas agreed to cooperate with the Govern-ment in a controlled delivery of the drugs. Cayas informed the agents that he had introduced to a man by the

- 3 -

name of "Celo", prior to leaving the United States. He told that Celo was the person he was to deliver the drugs to upon arrival.

Cayas was then sent to deliver the drugs to Penas, whom refused to accept delivery. Cayas was sent to Penas hotel room on three seperate occasions, but Penas refused to accept delivery each time. Finally, in the wee hours of the morning, Customs Officials conducted a forced entry into Penas mhotel room.

He was then taken to a different location in the hotel, made to sit in a chair in front of Caya's luggage, and photographed. The forced entry into his hotel room was executed without a search warrant, or warrant for his arrest.

Upon his detention at the scene, Penas made incriminating statements to the agents.

A search of his room turned up, allegedly, incriminating evidence, such as, strips of blue tape and stickers that were identical to the markings on the diving tanks in the luggage. Also discovered was an electronic weighing scale , all among Penas personal belongings.

At Custom's direction, Penas made a recorded telephone call to "Rex", and received calls from a man referred to as "Nonoy" in the Philipines. The calls resulted in the arrest of Prudencio "Larry" Mantanona.

- 4 -

UNTIMELY MOTION PURSUANT TO
RULE 9(a) OF THE RULES THAT
GOVERN 2255 MOTIONS.

On April 24, 1996, President Clinton signed the Anti-
terrorism and Effective Death Penalty Act of 1996.  The
Act has made several significant changes in habeas corpus
and Section 2255 practice and procedure.  Since the Act
went into effect , petitioners have one-year from the enact-
ment of the Act, which was April 24, 1997, or if the appeal
was taken, one-year from the date the Court of Appeals
affirms the conviction and sentence.  While rhetoric promo-
tion of this law was mostly focused on the abusive filing
by State prisoners, the Act contains provisions restricting
the post-conviction rights of all inmates, State and Federal.

The Supreme Court has made a distinction between succes-
sive petitions, and first habeas petitions.  **Lonchar v.
Thomas,** 577 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996).
Dismissal of a first federal habeas petition is a particu-
larly serious matter, for dismissal denies petitioner the
protections of the Great Writ entirely, risking injury
to an important interest in human liberty.

The Supreme Court has also stated that in habeas corpus
proceedings, the primary purpose is to ensure that no one
is unjustly imprisoned.  Therefore, if a prisoner is un-
ware of the legal significance of relevant facts, it would

- 5 -

be unreasonable to prohibit his attempt for judicial relief.

> "Prisoners are often unlearned in the
> law, and unfamiliar with the complicated
> rules of pleading. Since they act
> so often as their own counsel in habeas
> corpus proceedings, we cannot impose
> upon them the same high standards of
> the legal art which we might place
> on members of the legal profession.
> Especially, this is true in a case
> like this where the imposition of those
> standards would have a retroactive
> and prejudicial effect on the petitio-
> ner's inartistically drawn petition."
> **Price v. Johnston, 334 U.S. at 292.**

RULE 9(a):

Under 28 U.S.C., Section 2255, there is a provision

for the Court to grant an enlargement of time in which

to file. Rule 9(a) provides:

> (a)  Delayed Motions:  A motion for
> .relief made pursuant to these rules
> may be dismissed if it appears that
> the government has been prejudiced
> in its ability to respond to the motion
> by delay in its filing unless the movant
> shows that it is based on grounds of
> which he could not have knowledge by
> the exercise of reasonable diligence
> before the circumstances prejudicial
> to the government occurred.
> (28 USC, SECTION 2255, RULE 9(a) 1988).

The loose equitable doctrine that the courts have long

used, and that Congress more recently codified in Rule

Case 1:02-cv-00012    Document 1    Filed 04/17/2002    Page 12 of 55

9(a) of the rules governing Section 2255 proceedings, is to deter prisoners from taking tactical advantage of the delay. Under the doctrine, a prisoner may not file a post conviction petition so long after the claimed errors took place that the government cannot adequately rebut the claims. It is quite clear that Congress' intent to implementing the Act was to deter prisoners from gaining tactical advantage causing prejudicial delay to the government. The key phrase at hand is "prejudicial delay", and the burden is on the government to show that it has been prejudiced by the delay. **Smith v. Secretary of New Mexico Department of Corrections**, 50 F.3d 801, 821-22 n. 30 (10th Cir.); **Walters v. Scott**, 21 F.3d 683, 686-87 (5th Cir. 1994)(The burden is on the State to ... make a particularized showing of prejudice ... [and to] show that the prejudice was caused by the petitioner having filed a late petition).

The AEDPA's new statutes of limitations do not abrogate Rule 9(a)'s doctrine of "prejudicial delay" or amend Rule 9(a) in any respect. **Hughes v. Irvin**, 967 F.Supp. 775, 779 (E.D.N.Y. 1997)(assuming that 1996 amendments to habeas corpus statute adding statute of limitations do not supersede prejudicial delay defense in Habeas Rule 9(a)). The following sections take up each of the three require-

- 7 -

ments of the "prejudicial delay" doctrine of Rule 9(a).

DELAY IN FILING:

The government bears the burden of pleading and proving that the petitioner unreasonably delayed setting in motion the course of judicial events necessary to bring his petition before the court. Petitioner-initiated delay in filing may include a failure to initiate post conviction proceedings within a reasonable period following his direct appeal, and/or certiorari petition to the United States Supreme Court.

On the other hand, periods during which prejudice accrues to the government do not qualify as "delayin ... filing" within the first prerequisite for Rule 9(a) dismissal if, during those periods, the petitioner (1) was litigating the case consientiously in state or federal courts, (2) did not have available to him the grounds for relief now asserted in the federal petition, or (3) was prevented frominitiating the next litigative steps by some action or omission of the courts, the government, or some other party besides the petitioner or by other circumstances beyond the petitioner's control. Rule 9(a) imposes no minimum time period necessary to establish that a delay in filing has occurred.

PREJUDICE:

The government bears the burden of pleading and pro-
ving that petitioner-initiated delay prejudiced the go-
vernment. **Walters v. Scott, 21 F.3d 683, 686-87 (5th
Cir. 1994)**(the burden is on the state to ... make a parti-
cularized showing of prejudice ... and to show that the
prejudiced was caused by the petitioner having filed
a late petition). Concluding that it is sound policy
to require the defendant to overcome the presumption
of prejudice triggered exclusively by the passge of
time, Congress provided in Habeas Rule 9(a) that the
government's burden persists no matter how lengthy the
petitioner's delay in filing. **Lalande v. Spalding, 651
F.2d 643, 644 (9th Cir. 1981)**.

To satisfy this second prerequisite to dismisaal
based on delay, the state must show (1) "particularized
... prejudice," **Wise v. Armontrout, 952 F.2d at 223** (...
state may not merely allege prejudicial facts, but must
offer concrete proof of allegations). Accord **Marks v.
Estelle, 691 F.2d 730, 732, 734 (5th Cir. 1982); Paprskar
v. Estelle, 612 F.2d 1003, 1008 (5th Cir.); Jackson
v. Estelle, 570 F.2d 546, 547 (5th Cir. 1978)**.
(2) stemming from delay attributable to the petitioner,
**Lawrence v. Jones, 837 F.2d 1572, 1573-74 (11th Cir.**

- 9 -

1988), and (3) affecting the state's ability to respond to the petition, **Cotton v. Mabry**, 674 F.2d 701, 704 (8th Cir.). In the last regard, Habeas Rule 9(a) does not permit dismissal based on lapses of time that affect the stae's ability to retry and convict the petitioner, nor do lapses of time that affect the state's ability, but that do not make it virtually impossible for the state to respond, require dismissal. Accordingly, as to claims based on in-court proceedings or ones that otherwise were recorded, the state generally must show both that the transcript is unavailable and that participants in the proceeding - the presiding judge, court reporter, prosecutor, petitioner's trial attorney, law enforcement officials, etc., are unavailable or unable to remeber the critical events. **Walters v. Scott**, 21 F.3d at 687-89 (5th Cir.). To determine whether this burden is met, the court generally must conduct a hearing on the question and make specific findings as to prejudice.

Based on the foregoing principles, and the fact that the AEDPA does not abrogate Rule 9(a), Penas sets out the facts and relevant law that are the basis of his untimely petition. Penas asks that this Court address the merits of his habeas petition for relief.

- 10 -

# INEFFECTIVE ASSISTANCE OF COUNSEL

A court reviewing a claim of ineffective assistance of counsel must not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. U.S.C.A., Const. Amend. 6.

In **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-prong test for determining whether counsel's representation of a criminal defendant at trial or a capital sentencing proceeding is so deficient as to require reversal of the conviction. First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Id. at 687, 104 S.Ct. at 2064.

Under the **Strickland** test, a reviewing court's scrutiny of counsel's performance must be highly deferential, and

Case 1:02-cv-00012    Document 1    Filed 04/17/2002    Page 17 of 55

must strongly presume that counsel's advocacy fell, "within the wide range of reasonable professional assistance." Id., at 689, 104 S.Ct. at 2056. In evaluating counsel's performance the court should also "keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Id., at 690, 104 S.Ct. at 2066. A reviewing court must not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errores. Id. at 689-90, 104 S.Ct. at 2574, 2586, 91 L.Ed.2d 305 (1986).

Strategic choices made after thorough investigationof law and facts relevant to plausible options are vitually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgements support the limitations on investigation. **Strickland** at 695. In other words, counsel has duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigation must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgements.

**Strickland**, explains that access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled. 466 U.S. at 685, 80 L.Ed.2d 674, 104 S.Ct. 2052. (quoting **Adams v. U.S.**, ex rel. **McCann**, 317 U.S. 269, 275, 276, 87 L.Ed. 268, 63 S.Ct. 236, 143 ALR 435 (1942).

Counsel has duty to bring to bear such skill and know-ledge as will render the trial a reliable adversarial test-ing process. 466 U.S., at 688, 80 L.Ed.2d 674, 104 S.Ct. 2052. Counsel's competence, however, is presumed, and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under pre-vailing professional norms, and that the challenged action was not sound strategy. Id., at 688-89, 80 L.Ed.2d 674, 104 S.Ct. 2052.

The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. Id. at 690, 80 L.Ed.2d 674, 104 S.Ct. 2052. Because that testing process general-

- 13 -

ly will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies.

In Mr. Penas case, there was a complete breakdown in the adversarial testing process when his attorney failed to investigate the prosecution's case or any possible defense strategies. In fact, counsel in this particular case failed to file any motions whatsoever, such as motion for discovery, and more important, a motion to suppress the evidence and statements. **Exhibit B** .

Trial counsel's failure to subject the prosecution's case to a meaningful adversary testing process, may constitute a denial of due process, and establish a per se violation of Pena's right to effective assistance of counsel. **U.S. v. Cronic**, 466 U.S. 648, 80 L.Ed.2d 657, 104 S.Ct. 2039 (1984).

**(1)   COUNSEL INEFFECTIVE WHEN HE FAILED TO LITIGATE PENA'S FOURTH AMENDMENT CLAIM:**

The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy of our adversary process. **Gideon v. Wainwright**, 372 U.S. 335, 344, 9 L.Ed 2d 799, 83 S.Ct. 792, 23 Ohio Ops 2d 258, 93 ALR 2d 733 (1963). The essence of an ineffective assistance of counsel claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. See, e.g., **Strickland v. Washington**, 466 U.S., at 686, 80 L.Ed.2d 674, 104 S.Ct. 2052; **U.S. v. Cronic**, 466 U.S. 648, 655-657, 80 L.Ed.2d 657, 104 S.Ct. 2039 (1984).

Where defense counsel's failure to litigate a Fourth Amendment claim, is the principle allegation of ineffectiveness. The defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, while respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have seperate identities and reflect different constitutional values. **Kimmelman**

- 15 -

**v. Morrison**, 477 U.S. 365, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986).

The Fourth Amendment affords protection against governmental intrusion into one's home and affairs pertains to all citizens. The gravamen of a Fourth Amendment claim is that the complainant's legitimate expextation of privacy has been violated by an illegal search and seizure. See, e.g., **Katz v. U.S.**, 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507 (1967). In order to prevail, the complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy in the itme or place at issue. See, e.g., **Rawlings v. Kentucky**, 448 U.S. 98, 65 L.Ed.2d 633, 100 S.Ct. 2556 (1980).

COUNSEL AWARE OF CIRCUMSTANCES SURROUNDING
ILLEGAL ENTRY INTO PENA'S HOTEL ROOM:

From the first day that Penas spoke with his attorney concerning his arrest, he adamantly informed counsel of the way he had been arrested. Penas expressed to his attorney that his constitutional rights had been violated, and that he wanted counsel to litigate the issue.

Specifically, Penas told counsel of how on the night of November 11, 1998, Alwin Cayas (Cayas) knocked at his hotel room door. Penas found this somewhat surprising,

- 16 -

because Penas had lost track of Cayas at the airport. No one knew that Penas was staying at the Harmon Loop Hotel, especially Cayas. Penas allowed Cayas to step into his room, and Cayas told him that he felt nervouse and uncomfortable in his own room. Penas told him to go back to his own room and take a shower, go to bed, and that Penas would see him in the morning. Penas then went to bed and reminded Cayas to lock the door after him. Not 15 -20 minutes had gone by when Cayas was back asking Penas to take the luggage from his room. Penas told Cayas not to bother him again, and that if he came back he would not answer the door, because he would already be sleeping. Again, Penas told him that he would see him in the morning.

After another 15 minutes, there was a third knock at the door. This time when Penas asked who it was, a garbled voice answered, and not that of Cayas. Penas secured the chain-lock and slowly started to open the door, at which time the door came crashing down on to him. A team of 6 Agents had kicked in Penas door, splintering the wood frame and door.

Penas was knocked to the floor as agents stood on top of him, pointing guns and yelling "Police". They then handcuffed Penas and sat him on a chair. With one officer standing guard, the rest of the group went into the hallway

and had a conference. To this point, Penas had not yet been served with a warrant, or read his Miranda rights. When the group came back into the room, Penas was ordered to stand up, dragged barefooted and handcuffed out of his room, down the stairs, past the manager at the front desk, and into Alwin Cayas room. There, they sat him down in a chair. Behind Penas an Agent opened a closet, pulling Caya's luggage half-way out so it was visible behind Penas. Another agent then took photos of Penas, using the luggage as a background. At that point in time, another Agent read Penas his Miranda rights. [1]

The leader of the group introduced himself as Customs Special Agent Robert Robertson. Agent Robertson then asked Penas for his consent to search his carry-on bag, which back in Pena's room. While still in Caya's room, Agent Robertson sent some men up to Pena's room to search his bag.

More than an hour later, they took Penas back to his own room. In his own room agents had discovered stickers identical to the ones on the diving tanks in the luggage. Matching the stickers found in Pena's carry-on bag to the stickers on the diving tanks in Caya's luggage, the Agents then, and only then, discovered the drugs. Robertson then convinced Penas into making several calls for them.

---

[1] Despite the PSR's conclusion that the drugs had been found at the airport, they were still hidden in luggage at the hotel.

Case 1:02-cv-00012    Document 1    Filed 04/17/2002    Page 24 of 55

COUNSEL FAILED TO INVESTIGATE:

Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgements support the limitations on investigation. **Strickland**, at 695. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgements.

Counsel has a duty to bring to bear such skill and knwoledge as will render the trial a reliable adversarial testing process. 466 US, at 688. In making a competency determination, the court will keep in mind that counsel's function is to make the adversarial testing process work in the particular case, Id., at 690, because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies.

- 19 -

In Mr. Penas case, there was a complete breakdown in the adversarial testing process when his attorney failed to investigate the prosecutions case or any possible defense strategies.

On November 12, 1998, the United States filed a criminal complaint against Penas. On NOvember 19, 1998, a federal grand jury returned a three-count Indictment against Penas. On November 30, 1998, the complaint against Penas was dismissed, however, he cotinued to be held in detention without bail. On December 14, 1998, Penas entered a guilty plea to an Information, instead of Indictment. On October 26, 1999, Penas was sentenced to 120 months imprisonment.

Penas now argues that his attorney failed to conduct any investigation into the government's case against him. That despite his adament requests for his attorney to look into the matter of his 4th Amendment rights violations, counsel failed to do so. In fact, counsel for Penas failed to even file a motion for discovery, motion to suppress evidence and statements made at the time of his arrest. See, Exhibit $B$ . Penas avers that counsel was ineffective when he chose to take the government's version of the facts as gospel. U.S. v. Matos, 905 F.2d 30 (2nd Cir. 1990)(Trial counsel's

willingness to accept the government's version of facts and failed to file any motions because he relied on the government's version of facts, and not based on his own reasonable investigation, calls counsel's representation into serious question of inadequacy); **Moran v. Morris**, 478 F.Supp. 145 (C.D. Cal. 1979)(Trial counsel's failure to conduct a pretrial investigation into the evidence seized, and failure to file a motion to suppress based on an illegal search, amounted to ineffective assistance of counsel); **Morrison v. Kimmelman**, 650 F. Supp. 801 (D.N.J. 1986)(Trial counsel's failure to pursue discovery, which would have made counsel aware of illegally seized evidence, amounted to ineffective assistance of counsel); **Clark v. Blackburn**, 619 F.2d 431 (5th Cir. 1980)(Trial counsel's failure to file any pre-trial motions on defensive issues, failed to seek pre-trial discovery, warranted an evidentiary hearing); **Smith v. Dugger**, 911 F.2d 494 (11th Cir. 1990)(Trial counsel's failure to move to suppress defendant's confession, constituted ineffective assistance of counsel).

Upon conferring with his attorney, Penas made counsel aware that the police had made forced entry into his hotel room. He asked his attorney to go to the

hotel and inspect the door of the room, that upon doing so, he would discover that the door jamb was splintered from the force of the blow by police. He asked his attorney to go to the hotel and speak to the hotel manager that was on duty that evening, and that he would discover that the manager saw the police walk Penas in handcuffs through the lobby and into Cayas room, where he was photographed in front of the drugs.

Without the presence of an attorney, Penas was intimidated by police into making incriminating state- ments, and telephone calls to phone numbers provided by the police. After forced entry, police then intimi- dated Penas into consenting to a search of his room and personal property, where, incriminating evidence was discovered.

Penas asserts that based on this incriminating evidence, his attorney, in conjuction with the Govern- ment attorney, he was compelled into pleading guilty. Penas also asserts that, at the very least, counsel should have requested discovery, and based on that discovery, should have filed a motion to suppress the evidence. If after that, Penas felt that there might be enough evidence to convict, attorney should have filed a motion to suppress, and based on the outcome

of that motion, Penas would have entered a "conditional plea". In other words, he would have entered a guilty plea, reserving his right to appeal the motion to suppress.

Penas avers that his attorney provided a deficient performance when he failed to file for discovery, and when he failed to file a motion to suppress illegally seized evidence.

Case 1:02-cv-00012    Document 1    Filed 04/17/2002    Page 29 of 55

**PENA'S FOURTH AMENDMENT RIGHT TO BE FREE OF ILLEGAL SEARCH AND SEIZURE, VIOLATED:**

The Fourth Amendment warrant requirement protects one's privacy interest in home or property. Absent exigent circumstances or some other exception, the police must obtain a warrant before they enter the home to conduct a search, or otherwise, intrude on an individual's legitimate expectation of privacy. See, **Maryland v. Dyson**, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)("The Fourth Amendment generally requires police to secure a warrant before conducting a search." (citing **California v. Carney**, 471 U.S. 386, 390-91, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)).

Absent a reasonable expectation of privacy, however, the warrant requirement is inapplicable and the legitimacy of challenged police conduct is tested solely by the Fourth Amendment's requirement that any search or seizure be reasonable. **Oliver v. U.S.**, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). The touchtone of the Fourth Amendment analysis is the question whether a person has a constitutionally protected reasonable expectation of privacy. **Katz v. U.S.**, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Fourth Amendment protects legitimate expectations of privacy rather than simply places. If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no "search" subject to

the warrant clause. Illinois v. Andreas, 463 U.S. 765, 77.1, 103 S.Ct. 3319, 77 L.Ed.2d 1002 (1983).

Fourth Amendment privacy interests are most secure when an individual is at home with doors closed and curtains drawn tight. Thus, "searches and seizures inside a home without a warrant are pesumptively unreasonable." **Payton**, 445 U.S. at 586, 100 S.Ct. 1371; See, id., at 576, 100 S.Ct. 1371 (prohibiting the police from making a warrantless and nonconsentual entry into a suspect's home in order to make a routine felony arrest"). The **Payton** rule, is directed primarily at warrantless physical intrusion into the home as the chief evil against which the working of the Fourth Amendment is directed), id., at 590, 100 S.Ct. 1371.

The Fourth Amendment has drawn a firm line at the entrance of the house. Absent exigent circumstances, that threshold may not be crossed without a warrant. **New York v. Harris**, 495 U.S. 14, 17, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). **Payton** was designed to protect the physical integrity of the home.

### Expectation Of Privacy:

Because Fourth Amendment rights are "personal", **Rakas v. Illinois**, 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.

Case 1:02-cv-00012    Document 1    Filed 04/17/2002    Page 31 of 55

2d 387 (1978), the central inquiry in any suppression hearing is whether the defendant challenging the admission of the evidence has shown a legitimate expectation of privacy in the place searched or the thing seized. **U.S. v. Salvucci**, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Whether a legitimate expectation of privacy exists in a particular item or place is a determination to be made on a case-by-case basis. **Brown**,635 F.2d 1207 at 1211. That question in turn entails a two-part inquiry: (1) whether the individual defendant has exhibited an actual subjective expectation of privacy, and (2) whether that expectation is one society recognizes as reasonable or legitimate. **Katz v. U.S.**, supra; **Smith v. Maryland**, 442 U.S. 735, 740-41, 99 S.Ct. 2577, 2580-81, 61 L.Ed.2d 220 (1979); **U.S. v. Brown**, 635 F.2d 1207 (6th Cir. 1980); **U.S. v. Bailey**, 628 F.2d 938, 940-41 (6th Cir. 1980).

Legitimation of expectation of privacy by law must have a source outside of the Fourth Amendment either by reference to concepts of real or personal property law, or to understandings that are recognized and permitted by society. **Rakas**, 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12. To identify which expectations merit Fourth Amendment protection, the courts have pointed to a number of factors. Most obvious among these is an individual's

possessory or propriety interestin the place or thing. However, a property right alone is not determinative of whether the individual reasonably expected freedom from government intrusion. **Mancusi v. De Forte**, 392 U.S. 364, 368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968).

In **U.S. v. Haydel**, 649 F.2d 1152 (5th Cir. 1981), the Fifth Circuit identified other factors, any one of which or any combination of which could, in the circumstances of a specific case signify legitimacy.

Other factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy, and whether he was legtimately on the premises. **Rawlings v. Kentucky**, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed. 2d 633 (1980); **Rakas v. Illinois**, supra.

**PENA'S HOTEL ROOM TREATED AS HOME
UNDER FOURTH AMENDMENT RIGHT TO
PRIVACY.**

It has been well established that the Fourth Amendment prohibition against unreasonable searches and unreasonable

- 27 -

seizures protects the legitimate privacy expectations of a hotel or motel room. U.S. v. Rosario, 962 F.2d 733 (7th Cir. 1992); U.S. v. Cooper, 203 F.3d 1279 (11th Cir. 2000); U.S. v. Singleton, 922 F.Supp. 1522 (D.Kan.) A hotel or motel room is treated as a "home" for purposes of the rule that warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances. People v. Watkins, Cal.App. 4 Dist. 1994, 31 Cal. Rptr. 2d 452, 26 Cal. App. 4th 19.

In the case of Mr. Penas, the hotel room was registered under his name, and paid in full until the following day. The door to his room was closed, and the security chain in place. There is no doubt that Penas expected full privacy in the comfort of his hotel room. Had Penas attorney investigated the facts of this case, he would have discovered that hotel management had to call mainte- nance to repair the damage inflicted to the door by the forced entry. Had counsel investigated, he would have discovered that the night auditor witnessed Penas being marched through the lobby to Caya's room in handcuffs and barefooted.

There is no doubt that Mr. Penas had a full expectation of privacy in his hotel room under the Fourth Amendment, and that, that right to privacy, and to be free from unrea-

sonable search and seizure, was violated when police conducted a warrantless forced entry into his hotel room.


## C O N C L U S I O N

Based on the foregoing facts and relevant law, there is no question that counsel should have filed a motion to suppress the evidence in this case. Penas requests that the Court take into consideration the circumstances, and the constitutional magnitude of the issue in this case, and address the merits of his petition.

The sentence in this case should be vacated, and the case remanded so that Pena can file a motion to suppress the evidence, and if necessary, that the court hold a hearing as to whether counsel provided ineffective assistance, which proved highly prejudicial to Pena's case.

Respectfully submitted,

✓ _Penas_
MARCELO PENAS
REG. NO. 01790-093
F.C.C.  *  LOW
P.O. BOX 26020
BEAUMONT, TEXAS 77720-6020

✓ 02/27/02
Date:

- 29 -

# A F F I D A V I T

I, Marcelo Penas, hereby declare under penalty of perjury, and pursuant to 28 U.S.C., Section 1746, that my foregoing statements contained within my petition for habeas relief, pursuant to 28 U.S.C., Section 2255, are true and correct to the best of my knowledge and beliefs.

Signed by my hand on this _27_ day of _FEBRUARY_ , 2002.

                                        _____
                                        MARCELO PENAS

**E X H I B I T S**

EXHIBIT A

mpenas.ple

F I L E D
DISTRICT COURT OF GUAM

DEC 14 1998

MARY L.M. MORAN
CLERK OF COURT

(3)

FREDERICK A. BLACK
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Suite 502-A, Pacific News Bldg.
238 Archbishop Flores Street
Agana, Guam 96910
Telephone: (671) 472-7332/7283
Telecopier: (671) 472-7334

Attorneys for United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE TERRITORY OF GUAM

# CR 9800305

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO. |
| Plaintiff, ) | |
| vs. ) | **PLEA AGREEMENT** |
| MARCELO PENAS ) | |
| Defendant. ) | |
| _____ ) | |

Pursuant to Rule 11(e)(1)(B), the United States and the defendant, MARCELO PENAS, enter into the following plea agreement:

1. The defendant, MARCELO PENAS, agrees to waive indictment and enter a guilty plea to an Information charging him with Conspiracy to Distribute Methamphetamine Hydrochloride a/k/a "Ice", in violation of Title 21, United States Code, Sections 841(a)(1), and 846. The government will move to dismiss the

1

ORIGINAL

indictment against him in Criminal Case No. 98-00293 upon sentencing.

2. The defendant, MARCELO PENAS, further agrees to fully and truthfully cooperate with Federal law enforcement agents concerning their investigation of the importation, possession, and distribution of controlled substances and related unlawful activities, including the disposition of profits from and assets relating to such activities. He agrees to testify fully and truthfully before any grand juries and at any trials or proceedings against any other co-conspirators if called upon to do so for the United States, subject to prosecution for perjury for not testifying truthfully. The United States will make this cooperation known to the Court prior to the defendant's sentencing. The defendant further understands that he remains liable and subject to prosecution for any non-violent Federal or Territorial offenses that he does not fully advise the United States, or for any material omissions in this regard. In return for this cooperation, the United States agrees not to prosecute defendant in the District of Guam or the Commonwealth of the Northern Mariana Islands for any other non-violent Federal offenses now known to the government or which he reveals to Federal authorities.

3. The defendant, MARCELO PENAS, understands and agrees that any and all assets or portions thereof acquired or obtained by him as a direct or indirect result of illegal trafficking in drugs or used to facilitate such illegal activity shall be surrendered to the United States or any lawful agency as may be directed by the Court. The assets to be surrendered

- 2 -

include, but are not limited to, cash, stocks, bonds, certificates of deposit, personal property and real property.

4. The defendant, MARCELO PENAS, further agrees to submit to a polygraph examination by any qualified Federal polygraph examiner if called upon to do so by the government. The defendant understands that such polygraph examinations may include, but will not be limited to, his knowledge of or involvement in unlawful drug related activities, his knowledge of others' involvement in such activities, and the identification of any and all assets and conveyances acquired in whole or in part by the defendant or others through unlawful drug related activities or the use of such assets or conveyances to further such unlawful activities. Defendant understands that the government will rely on the polygraph in assessing whether he has been fully truthful.

5. The defendant, MARCELO PENAS, understands that the maximum sentence for Conspiracy to Distribute in excess of 100 grams of Methamphetamine Hydrochloride a/k/a "Ice" is incarceration for life and a $4,000,000 fine. In addition, there is a mandatory minimum term of ten (10) years of incarceration which may not be stayed or suspended by the court. Any sentence imposed shall include a term of supervised release of at least five (5) years in addition to such terms of imprisonment, as well as such restitution as the court may order and a $100.00 special assessment fee. The $100 special assessment fee must be paid prior to or immediately upon sentencing.

If defendant cooperates as set forth in Paragraphs 2, 3, and 4, the government will recommend that defendant receive the

- 3 -

minimum term of incarceration legally available under the applicable statutes and Sentencing Guidelines. In addition, if defendant provides full, truthful, and substantial assistance to investigating federal agencies, the government will move the Court, as provided by USSG 5K1.1, and 18 U.S.C. § 3553(e), for a downward departure from the Guidelines and the statutory minimum sentence. Defendant understands that "substantial assistance" encompasses such significant and useful assistance directed to the investigation and prosecution of the criminal activities of other persons, as is set forth by USSG 5K1.1. Defendant also understands that the decision whether to depart from the Guidelines, and to what degree, is within the discretion of the sentencing judge. If defendant does not fully cooperate as set forth in Paragraphs 2, 3, and 4, the government will recommend that defendant receive a term of incarceration within the range recommended by the Sentencing Guidelines.

The government will recommend a fine within the Sentencing Guidelines range. If defendant is financially unable to immediately pay the fine in full, defendant agrees to make a full disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form (OBD-500) for purpose of fixing a monthly payment schedule. Defendant understands that, by law, interest accrues on any remaining balance of the debt.

6. The defendant understands that to establish a violation of Conspiracy to Distribute Methamphetamine Hydrochloride a/k/a "Ice", the government must prove each of the following elements beyond a reasonable doubt:

- 4 -

**First**, on or about November 10, 1998, there was an agreement between the defendant and at least one other person to deliver methamphetamine hydrochloride aka "ice" to another person; and

**Second**, the defendant became a member of the conspiracy knowing of its object to deliver methamphetamine or some other prohibited drug and intending to accomplish it.

7. The defendant understands that the sentencing guidelines apply to this offense. The government and the defendant stipulate to the following facts for purposes of the sentencing guidelines:

a. The defendant was born on October 16, 1947, and is a citizen of the Philippines.

b. If the defendant cooperates with the United States by providing information concerning the unlawful activities of others, the government agrees that any self-incriminating information so provided will not be used against defendant in assessing his punishment, and therefore, pursuant to § 1B1.8 of the sentencing guidelines, this information should not be used in determining the applicable guidelines range.

c. On November 10, 1998, one Alwin S. Cayas was a passenger aboard a Continental Airlines flight which arrived at the Guam International Airport from Honolulu, Hawaii. Cayas was referred to Guam Customs officers for secondary inspection, and it was discovered that he was carrying a hard shell case with diving equipment including two aluminum reserve tanks, and concealed in the bottoms of both tanks were packages of crystal methamphetamine a/k/a "ice." The total gross weight, including packaging, of the drugs was 1801.5 grams. Marcelo Penas, who

- 5 -

previously met Cayas in Los Angeles, and was aware of the drugs in Cayas' possession, also arrived on the same flight with Cayas. Upon arrival in Guam the defendant checked in at the Harmon Loop Hotel where he met Cayas, and instructed Cayas to bring the drugs to the defendant's hotel room the next day for further distribution. On November 11, 1998, the defendant, per instructions from his sources in California and the Philippines, contacted Prudencio T. Mantanona aka "Larry" by telephone, and arranged for him to pick up said drugs in Room# 252 of the hotel. The defendant intended to deliver said drugs to another for sale and distribution.

d.    Pursuant to USSG Section 1B1.3, the parties agree and stipulate that the total amount of methamphetamine hydrochloride attributable to the defendant as relevant conduct which may be considered for sentencing purposes in this case is the net weight, exclusive of packaging, after laboratory analysis, of the methamphetamine discovered by Customs on November 10, 1998.

e.    The defendant understands that notwithstanding any agreement of the parties, the United States Probation Office will make an independent application of the Sentencing Guidelines. The defendant acknowledges that should there be discrepancies in the final sentencing guidelines range projected by his counsel or any other person, such discrepancy is not a basis to withdraw his guilty plea.

8.    The defendant agrees to waive any right to appeal or to collaterally attack this conviction. The defendant reserves the right to appeal the sentence actually imposed in this case.

- 6 -

9. The defendant acknowledges that he has been advised of his rights as set forth below prior to entering into this plea agreement. Specifically, defendant has been fully advised of, has had sufficient opportunity to reflect upon, and understands the following:

a. The nature and elements of the charge and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;

b. His right to be represented by an attorney;

c. His right to plead not guilty and the right to be tried by a jury and at that trial, the right to be represented by counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself, that is, the right not to testify;

d. That if he pleads guilty, there will not be a further trial of any kind on the charges to which such plea is entered so that by entering into this plea agreement, he waives, that is, gives up, the right to a trial;

e. That, upon entry of a plea of guilty, or thereafter, the Court may ask him questions about the offenses to which he has pled, under oath, and that if he answers these questions under oath, on the record, his answers may later be used against him in prosecution for perjury or false statement if an answer is untrue;

f. That he agrees that the plea agreement is voluntary and not a result of any force, threats or promises apart from this plea agreement;

- 7 -

g.  That he had this agreement translated into his native language, and he fully understands it.

h.  The defendant is satisfied with the representation of his lawyer and feels that his lawyer has done everything possible for his defense.


DATED:  _12/11/98_          _[signature]_
                            MARCELO PENAS
                            Defendant


DATED:  _12-11-98_          _[signature]_
                            RICHARD ARENS
                            Attorney for Defendant

                            FREDERICK A. BLACK
                            United States Attorney
                            Districts of Guam and CNMI

DATED:  _12-11-98_     By:  _[signature]_
                            MARIVIC P. DAVID
                            Assistant U.S. Attorney

- 8 -

# United States District Court
## District of Guam

UNITED STATES OF AMERICA

vs.

**PENAS, MARCELO**

THE DEFENDANT:

- [✓] pleaded guilty to count(s)   1
- [ ] plead nolo contendere to count(s) which was accepted by the court.
- [ ] was found guilty on count(s) after a plea of not guilty.

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number:   **98-00305 -001**

ARENS, RICHARD P.
Defendant's Attorney

**FILED**
DISTRICT COURT OF GUAM

OCT 28 1999

MARY L.M. MORAN
CLERK OF COURT

RECEIVED
OCT 2 9 1999
CUNLIFFE & COOK

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 USC 846 & 21 USC 841(a)(1) | CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE HYDROCHLORIDE a/k/a "ICE" | 11/10/98 | 1 |

The defendant is sentenced as provided in pages 2 through _____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

- [ ] The defendant has been found not guilty on count(s)
- [ ] Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.:   622108470

Defendant's Date of Birth:   10/16/47

Defendant's USM No.:   01790093

Defendant's Residence Address:

23308 MARIGOLD AVENUE
#v-2-2
TORRANCE, CA   90502

Defendant's Mailing Address:

same

10/25/99

Date of Imposition of Judgment

Signature of Judicial Officer

John S. Unpingco
U.S. District Court Judge

Name and Title of Judicial Officer

OCT 2 8 1999

Date

Defendant:    **PENAS, MARCELO**

Case Number:    **98-00305 -001**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:  <u>**120  Month(s).**</u>

The court makes the following recommendations to the Bureau of Prisons:

**Defendant shall participate in a drug abuse treatment and vocational training program as approved by the Bureau of Prisons.**

The defendant is remanded to the custody of the United States Marshal.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

By _____

Defendant:    **PENAS, MARCELO**

Case Number:    **98-00305 -001**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **60 months.**

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

> The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.
>
> ☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.

☑ The defendant shall not posess a firearm as defined in 18 U.S.C. § 921.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page (if indicated below).

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcemenet agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such

Defendant:    **PENAS, MARCELO**

Case Number:    **98-00305 -001**

## ADDITIONAL SUPERVISED RELEASE TERMS

Defendant shall submit to one urinalysis test within 15 days after release from imprisonment, and to two more urinalysis tests within sixty days thereafter.

Defendant shall participate in a program approved by the U.S. Probation Office for treatment of narcotic addiction of drug or alcohol dependency which will include testing for the detection of substance abuse or use.

Defendnat shall obtain lawful employment and support his dependents.

Defendant shall perform 400 hours of community service under the direction of the U.S. Probation Office.

Defendant:    **PENAS, MARCELO**

Case Number:    **98-00305 -001**

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set on the Schedule of Payments page of this order, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals** | $ 100.00 | $ 0.00 | $ 0.00 |

☐ If applicable, restitution amount ordered pursuant to plea agreement.........    $    0.00

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of **$**    **0.00**

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Page 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ The interest requirement is waived.

☐ The interest requirement is waived as follows:

# RESTITUTION

☐ The determination of restitution is deferred until _/ /_      . an Amended Judgment in a Criminal Case will be entered after such a determination.

☐ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| **Name of Payee** | **Total Amount of Loss** | **Amount of Restitution Ordered** | **Priority Order or Percentage of Payment** |
|---|---|---|---|
|  |  |  |  |

Totals:  $    0.00      $    0.00

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses

Defendant:    **PENAS, MARCELO**

Case Number:    **98-00305 -001**

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order:  (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A  [✓]  in full immediately; or

B  [ ]            immediately, balance due (in accordance with C, D, or E); or

C  [ ]  not later than  *I I*        ;

D  [ ]  in installments to commence            day(s) after the date of this judgment.  In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E  [ ]  in                installments of
       over a period of              year(s) to commence            day(s) after the date of this judgment.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

**or during the term of imprisonment or during the term of supervised release.**

[ ]  The defendant shall pay the cost of prosecution.

[ ]  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments, except those payments made through the Bureau of Prison's Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

Defendant:    **PENAS, MARCELO**

Case Number:    **98-00305 -001**

# STATEMENT OF REASONS

[√] The court adopts the factual findings and guideline application in the presentence report.

## OR

[ ] The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

**Guideline Range Determined by the Court:**

Total Offense Level:    <u>33</u>

Criminal History Category:    <u>I</u>

Imprisonment Range:    <u>135</u> TO <u>168</u> **MONTHS**

Supervised Release Range:    <u>60</u> TO <u>0</u> **MONTHS**

Fine Range:    $ <u>17,500.00</u> TO    $ <u>4,000,000.00</u>

[√] Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ <u>0.00</u>

[ ] Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

[ ] For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

[ ] Partial restitution is ordered for the following reason(s):

[ ] The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

[ ] The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

## OR

[√] The sentence departs from the guideline range:

    [√] upon motion of the government, as a result of defendant's subtantial assistance.

    [√] for the following specific reason(s):

    **Court grants the Motion to Depart for Substance Assistance and departs to a Level 30.**

EXHIBIT B

| DATE | NR. | PROCEEDINGS | Excl Del |
|------|-----|-------------|----------|
| **_1998_** | | | |
| 12/14 | 1-1 | INFORMATION ;    [RMM EOD 12/17/1998] | |
| | 2-1 | WAIVER Of Indict ;    [RMM EOD 12/17/1998] | |
| | 3-1 | PLEA Agreement ;    [RMM EOD 12/17/1998] | |
| | 4-1 | MINUTE ENTRY - Plea - Guilty plea entered.  Status hrg set for 01/05/99 at 1:30 p.m. Dft rem to US Marshal;    [RMM EOD 12/17/1998] | |
| | 5-1 | APPLICATION  & Ord to Seal Rec;    [RMM EOD 12/17/1998] | |
| 12/15 | 6-1 | ORDER  of Detention;    [RMM EOD 12/17/1998] | |
| **_1999_** | | | |
| 1/ 5 | 7-1 | STIPULATION  of Parties to Cont Status Hrg - resched to 04/06/99 at 1:30 p.m.; [RMM EOD 01/07/1999] | |
| 4/ 6 | 8-1 | STIPULATION  & Ord to Cont Status Hrg - Status Hrg cont'd to 06/08/99 - 2:30 p.m.; [MBA EOD 04/06/1999] | |
| | 9-1 | APPLICATION  & Ord to Unseal Rec;    [MBA EOD 04/07/1999] | |
| 4/ 7 | 10-1 | APPLICATION  & Ord to Seal Rec;    [MBA EOD 04/07/1999] | |
| 5/10 | 11-1 | STIPULATION  & Ord to Vacate Status Hrg; Unseal Rec and Set Sent Date - status hrg vacated, rec unsealed, Sent set for 09/14/99 at 1:30 p.m. PSR due 08/10/99; [RMM EOD 05/11/1999] | |
| 8/25 | 12-1 | ORDER  - Sent reset to 08/31/99 - 10:30 .m.;   [MBA EOD 08/25/1999] | |
| 8/27 | 13-1 | STIPULATION  & Ord to Resched Sent - Sent resched to 09/24/99 - 1:30 p.m.; [MBA EOD 08/30/1999] | |
| 8/30 | 14-1 | GOVERNMENT'S Statement Adoptng Fndgs of PSR;   [MBA EOD 08/30/1999] | |
| 9/22 | 15-1 | GOVERNMENT'S Mtn for a Downward Departure Under 18 USC §3553(e) & USSG 5K1.1;  [MBA EOD 09/22/1999] | |
| 9/24 | 16-1 | STIPULATION  & Ord to Cont Sent - Sent cont'd to 10/25/99 - 1:30 p.m.;   [MBA EOD 09/24/1999] | |
| 10/26 | 17-1 | MINUTE ENTRY  - Sentencing - DFT sent to 120 mos. impris; 60 mos. suprvd rel; 400 hrs. community svcs; $100 special assessment fee; fine waived.  DFT ord remanded to custody of U.S. Marshals;  [MBA EOD 10/26/1999] | |
| 10/28 | 18-1 | JUDGMENT  in a Cr Cs;  [MBA EOD 10/29/1999] | |

Case 1:02-cv-00012     Document 1     Filed 04/17/2002     Page 55 of 55